**In re Anonymous No. 30 D.B. 77**

Disciplinary Board Docket no. 30 D.B. 77.

HARRINGTON, *Board Member*, May 16, 1978—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board), herewith submits its findings and recommendations to your honorable court with respect to the above proceeding.

## I. HISTORY OF PROCEEDINGS

At the above number, a petition for discipline was filed by the office of disciplinary counsel naming [ ] as respondent therein. In due course, the matter was assigned to hearing committee [ ] comprised of [ ], chairman, [ ] and [A], members. Mr. [A] was not present for the hearing nor did he participate in the recommendation. The matter came on for hearing at the office of the disciplinary board, district [ ] office at [ ] building, [ ], Pa. [ ], on December 15, 1977, at which time [ ] represented the office of disciplinary counsel, petitioner, and respondent was represented by [ ], Esq. A substantial number of stipulations were entered into, exhibits were examined and received into evidence, and several witnesses were called on behalf of petitioner. Respondent testified in his own behalf.

After testimony was closed, the hearing committee filed a report in which it concluded that respondent had violated the following disciplinary rules:

Disciplinary Rule 1-102 (A)(4)—dealing with conduct involving dishonesty, fraud, deceit and misrepresentation.

Disciplinary Rule 2-110(B)(4)—dealing with withdrawal by a lawyer when he is discharged by his client.

and recommended to the board that [respondent] be publicly censured by the Supreme Court of Pennsylvania.

No objections were filed to the hearing committee report.

The board adopts the findings and conclusions of the hearing committee and recommends to this honorable court that [respondent] be publicly censured by the Supreme Court of Pennsylvania.

## II. FINDINGS

Respondent was admitted to the practice of law in Pennsylvania in November, 1968. He maintains offices in the [   ] building in [   ], Pa. and from time to time has employed other attorneys to assist him in the practice but was not at the time of the incidents hereinafter discussed a member of a partnership or another association for the practice of law. At the time of the hearing in this matter, respondent was able to describe his practice as follows:

"I have an extremely large law practice and I would say that I have on the average handled approximately one hundred cases per year in personal injury field alone. . . . I have thousands of other clients. I have a large domestic relations practice

and I was on a retainer from [   ] at one time and I had a large criminal practice. I represented people in the hard core program there and I do some labor law work and other matters in the general practice area." (T. 103, 104).

Respondent was retained by Mr. [B] (hereinafter referred to as [B]), a resident of California, to represent him in a claim for damages resulting from injuries sustained by [B] when he fell in the parking lot of the [   ] airport ([   ] parking), on October 4, 1972. A review of the contents of respondent's file reveals a record of activity in the matter between October, 1972 and March, 1973 (Petitioner's Exhibit 8).

[B] died on July 22, 1973, from conditions not related to the accident. Thereafter respondent dealt with Mrs. [B], the widow of the injured client.

Respondent allowed the statute of limitations to run on October 4, 1974, without commencing an action or otherwise tolling the statute of limitations. From the content of respondent's file, it appears that some effort was made to obtain the information necessary to prepare the case for settlement or trial (Petitioner's Exhibit 8). As early as October 18, 1972, the parking lot insurance company was aware that respondent represented [B]. The file does not reveal how the insurance company became aware of that fact, however (Petitioner's Exhibit 19-A). There appears to have been no written correspondence between respondent and the insurance company claims department and no demands nor settlement offers were recorded as having been made between them.

Sometime after [B's] death and after the statute of limitations had expired, respondent wrote to [B's]

widow (Petitioner's Exhibit 11) to report an offer of $250 and enclosing a release in that amount. The widow did not sign the release.

On several occasions thereafter, she wrote to respondent requesting information concerning the status of her deceased husband's claim (Petitioner's Exhibits 13, 14). From those letters, it is apparent that she did not know that respondent had allowed the passage of time to bar any action on the claim.

In the summer of 1975, respondent discussed the matter with [C], Mrs. [B's] brother, and through [C] communicated an offer of $500 to the widow, which she agreed to accept (Petitioner's Exhibit 13). Respondent did not send the money nor did he explain his refusal to do so. By January, 1976, Mrs. [B], who had heard nothing more from respondent, determined that she must take further action. She dismissed respondent as her lawyer and retained [D], of the [    ] County Bar (Petitioner's Exhibit 15). Mr. [D] promptly wrote to respondent rejecting the offer from respondent and requested him to forward the [B] file. The file was not turned over to attorney [D] until September 1, 1976.

The matter was finally concluded when a malpractice action against respondent was settled for $1,500.

## DISCUSSION

Respondent negligently failed to commence an action on behalf of his client within the two-year statutory period. It is an experience that has been shared by a number of lawyers. While it is an oversight that can seldom if ever be excused, it is certainly one that can be understood. When it occurs, it

creates an embarrassing problem that must be dealt with promptly and directly with the client. The client must be informed in order that disinterested representation may be obtained and the client will not be required to rely upon the attorney against whom a claim is or may be made for a determination of the value of that claim.

Respondent not only failed to advise Mrs. [B] of his error but attempted to conceal it from her by deceit and misrepresentation. Respondent's attempts to excuse his failure to commence the action by reciting an impressive catalogue of professional and business activities was not satisfactory to the hearing committee. His denial of the charges that he had misrepresented the facts to his clients fell far short of the mark and the hearing committee expressed its opinion on respondent's credibility as follows:

"The committee was more concerned that respondent was not truthful at the hearing than it was by the deceits practiced on Mrs. [B]." (Hearing Committee Report, p. 8)

This matter appears to be a situation where an attorney has accepted a case as a favor to an old client and later characterizes the case as follows: "Mr. [B] had a daylight falldown of no liability. I repeat, no liability. The extent of Mr. [B's] injuries was a $110.00 doctor bill from Dr. [ ], and a $26 doctor bill of a local hospital." (Petitioner's Exhibit 2) When respondent finally turned his attention to the case, it was too late to do anything but try to cover up the oversight with bluster and legal double talk. In a letter dated August 3, 1976, addressed to Mrs. [B], he wrote:

"I want you to understand that the medical bills in this case were very small and by my willingness to pay the $110 out of the case in addition to not taking a fee you would have had to receive $1,000 in court in order to end up in the same position. In my opinion, I am being very generous and I am under no legal responsibility to act this way in this particular matter. Regardless of whether you wish to have other counsel in this matter is not relevant or important at this particular time. You can hire 10,000 attorneys but no one can institute a legal action since the statute of limitations has run. . . ." (Petitioner's Exhibit 16).

Respondent at the hearing and in various letters to Mrs. [B] and disciplinary counsel insisted repeatedly that he had received offers from the parking lot insurance company. The record failed to support respondent's allegations and the hearing committee decided all issues of credibility against respondent. The hearing committee recommended public censure by the Supreme Court and with this recommendation the board concurs.

## RECOMMENDATION

The board recommends to the honorable court that respondent, [   ], be publicly censured by the Supreme Court of Pennsylvania.

## ORDER

And now, June 12, 1978, the report and recommendation of the disciplinary board dated May 16, 1978, is accepted; and it is ordered and decreed,

that the said [respondent] of [   ] county, be subjected to public censure by the Supreme Court, as provided in Rule 204(3) of the Rules of Disciplinary Enforcement, at the session of this court commencing September 18, 1978, at Pittsburgh.